FILED
U.S. DISTRICT COURT

2009 JAN -8   AM 9: 00

CLERK _____
SO. DIST. OF GA.

BOXER X, f/k/a Stanley Farley, )
          )
   Plaintiff,    )
          )
  v.       )  CV 603-147
          )
ANGELA HARRIS, Sergeant,  )
          )
   Defendant.   )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Smith State Prison in Glennville, Georgia, for all times relevant to this litigation,[1] commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is *pro se* and is proceeding *in forma pauperis*. This matter comes before the Court on Defendant's motion for partial summary judgment.[2] (Doc. no. 48). Plaintiff

---

[1] Plaintiff is currently incarcerated at Valdosta State Prison in Valdosta, Georgia.

[2] A brief procedural history of this case will be helpful in framing the issues presented herein. Plaintiff's complaint presented two claims for relief, one for violation of the Eighth Amendment and another under the Due Process Clause of the Fourteenth Amendment. (Doc. no. 1); X v. Harris, 437 F.3d 1107, 1109 (11th Cir. 2006). This Court's March 3, 2004 Report and Recommendation recommended that Plaintiff's complaint be dismissed for failure to state a claim upon which relief may be granted. (Doc. no. 7). Plaintiff filed objections to this recommendation, in which he for the first time made allegations of retaliation against Defendant Harris. (Doc. no. 7). The Honorable B. Avant Edenfield, United States District Judge, adopted the March 3, 2004 Report and Recommendation and dismissed Plaintiff's complaint. (Doc. no. 12). Plaintiff appealed, and the Eleventh Circuit affirmed the dismissal of Plaintiff's Eighth Amendment claims, Harris, 437 F.3d at 1111, but determined that Plaintiff had stated claims for violation of privacy and retaliation, id. at 1111, 1112. Therefore, it remanded Plaintiff's case for consideration of these claims. Id. at 1112. On

opposes this motion. (Doc. nos. 55, 56, 57). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for partial summary judgment be **GRANTED IN PART** and **DENIED IN PART**, and that Plaintiff's unexhausted bodily privacy claims, retaliation claims, and official capacity claims be **DISMISSED**. This case should proceed as to Plaintiff's July 24, 2003 bodily privacy claim against Defendant in her individual capacity.

## I. STATEMENT OF FACTS

**A.    Plaintiff's Version**

In response to Defendant's motion for partial summary judgment, Plaintiff submitted his statement of facts as part of his "Declaration in Opposition" to Defendant's motion. According to Plaintiff, he and Defendant Harris ("Defendant") had a conversation when Defendant came to his unit in administrative segregation. (Doc. no. 55, p. 2). When Plaintiff complained that his tray was dirty and his food was cold, Defendant allegedly told him she would only get him a clean tray and hot food if Plaintiff "showed her his penis." (Id. at 2-3). Plaintiff apparently refused, and Defendant became upset and told him that "[he] would regret turning her down." (Id.). Plaintiff goes on to contend that on July 22, 2003, Defendant came to his unit and called through his tray slot, asking whether Plaintiff was ready to "get with" her or would he continue "to play hard to get." (Id.). Defendant allegedly then peered through the slot and ordered Plaintiff to strip and masturbate for her. (Id.). When Plaintiff

---

remand, service of process was issued on Defendant Harris, and Defendant filed her answer on August 20, 2007. (Doc. nos. 28, 30). Following some discovery disputes, Defendant filed the instant motion. Notably, Defendant has not sought summary judgment on Plaintiff's July 24, 2003 claim against Defendant in her individual capacity.

again refused, Defendant apparently got mad and left. (Id. at 6). Plaintiff further alleges that on July 24, 2003, Defendant came to his cell again and called to him through the tray slot, ordering him to masturbate. (Id.). When Plaintiff refused, Defendant allegedly told Plaintiff she was giving him "a direct order to masturbate" and that she would issue a disciplinary report if he did not. (Id.). Taking Defendant's threat seriously, Plaintiff maintains that he took off his clothes and masturbated while Defendant watched. (Id.).

Following this incident on July 24, 2003, Plaintiff contends he received two false disciplinary reports in the mail, written by Defendant. (Id.). The July 5, 2003 report cited Plaintiff for insubordination and verbal threats, while the July 23, 2003 report cited Plaintiff for exposure/exhibition and failure to follow instructions. (Id. at 4). According to Plaintiff, Defendant wrote these reports to "intimidate" him and "coerce" him into participating in the sexual activity. (Id.). Plaintiff alleges that he did not receive notice of these charges until August 1, 2003 and was not afforded the opportunity to challenge them in a disciplinary hearing. (Id.).

Plaintiff goes on to allege that on August 25, 2003, Defendant approached Plaintiff's unit yet again and told him that if he "followed her orders, she would not write anymore false disciplinary reports against [him] and that she would take care of [his] sexual needs." (Id. at 7). Defendant apparently told Plaintiff that if he refused, she would continue to write false disciplinary reports against him and persuade her co-workers to do the same. (Id.). Plaintiff states that he proceeded to obey Defendant's order to strip and masturbate while Defendant watched. (Id.). According to Plaintiff, incidents involving the same requests and behavior continued to take place, specifically on September 5, 2003, September 23, 2003, October 9,

2003, November 5, 2003, November 13, 2003, and November 15, 2003. (Id. at 5). Plaintiff

states that during each of these encounters, he told Defendant to stop coming to his room and

giving him sexually explicit orders, but Defendant continued to do so, even after Plaintiff

reported Defendant to her supervisors. (Id.). Plaintiff maintains that he only participated in

the above-described behavior after Defendant initiated it and made threats against him if he

did not obey her orders. (Id.; doc. no. 11, p. 1).

**B.    Defendant's Version**

Not surprisingly, Defendant paints a much different picture regarding what happened

(or did not happen) on the dates in question. She states that on July 5, 2003, Plaintiff

complained to Defendant while Plaintiff was obstructing the tray slot of his cell door with his

arm. (Doc. no. 49, Ex. B, ¶ 4) (hereinafter "Harris Aff."). According to Defendant, Plaintiff

initially refused to obey her instructions to remove his arm, but did so upon Defendant's

second order. (Id.). After Defendant closed and secured the slot, Plaintiff apparently yelled

"You tricked me bitch! Those crackers are going to get you killed. . . . . Mother f------ b----!

I will get you! B----es like you are the reason I am here! I am going to kidnap you and put you

in the trunk of my car! Wait till I get out of here! . . . . F--- you b----!" (Id.). Based on this

behavior, Defendant states that she issued Plaintiff a disciplinary report for insubordination

and verbal threats, which was not false or fabricated in any way. (Id.; doc. no. 49, Ex. A-6).

A few minutes later, Plaintiff apparently refused to obey a direct order from Officer James

Sprouse to remove his arm from the tray slot. (Doc. no. 49, Ex. A-7). Officer Sprouse states

that based on this behavior, he issued Plaintiff another disciplinary report for insubordination.

(Id.). Defendant states that she was notified of the incident because of her supervisory

4

position, but did not instruct Officer Sprouse to write the report and was not otherwise involved in this second incident on July 5, 2003. (Harris Aff., ¶ 5).

Officer Eric Moore states that on July 22, 2003, he was collecting food trays from Plaintiff's unit, and Plaintiff refused his direct order to remove his arm from the tray slot. (Doc. no. 49, Ex. D, ¶ 3) (hereinafter "Moore Aff."). Officer Moore apparently then issued Plaintiff a disciplinary report for failure to follow instructions and reported the incident to Defendant. (Id., Ex. A-9). Again, other than being notified of this incident, Defendant states that she was not involved in the issuance of the July 22, 2003 disciplinary report. (Harris Aff., ¶ 7). Also on July 22, 2003, Defendant alleges that she and another officer were conducting security checks in the dormitory where Plaintiff was housed. (Id. at ¶ 6). She states that when they arrived at Plaintiff's cell, his tray slot was open and both she and the other officer observed Plaintiff masturbating while he was looking directly at her. (Id.). Accordingly, Defendant apparently issued Plaintiff a disciplinary report for exposure/exhibition, which was not false or fabricated in any way. (Id. at ¶¶ 6, 11; doc. no. 49, Ex. A-8).

Continuing to respond to Plaintiff's allegations, Officer Moore states that on July 24, 2003, he attempted to serve Plaintiff his dinner but his tray slot was again blocked by Plaintiff's arm. (Moore Aff., ¶ 4). Officer Moore states that he ordered Plaintiff to remove his arm, but Plaintiff refused. (Id.). Officer Moore apparently notified his supervising officer of Plaintiff's behavior and issued Plaintiff a disciplinary report for failure to follow instructions. (Id.; doc. no. 49, Ex. A-5). Defendant states that she was in the dining facility at the time and was not involved in the incident in any way. (Harris Aff., ¶ 8). She goes on

5

to maintain that she did not ask Officer Moore to falsify or fabricate the disciplinary report. (Moore Aff., ¶ 6).

Finally, Defendant states that she did not order Plaintiff to masturbate on July 22, 2003, July 24, 2003, August 28, 2003, September 25, 2003, September 23, 2003, October 9, 2003, November 5, 2003, November 13, 2003, or November 15, 2003. (Harris Aff., ¶ 9). Nor has she had any type of sexual relationship with Plaintiff or any other inmate. (Id.). Moreover, she contends that she has had no significant contact with Plaintiff, other than the routine contact required by her job, during the time period he alleges Defendant was sexually harassing him. (Id. at ¶ 10).

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests

---

[3]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

with the <u>movant</u>, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.     Availability of Administrative Remedies**

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). Simply put, as the plain language of § 1997e(a) makes clear, if an administrative remedy is "available," it must be exhausted. 42 U.S.C. § 1997e(a); see also Alexander, 159 F.3d at 1326 (explaining that under PLRA courts are "to focus solely on whether an administrative remedy program is 'available'").

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 92 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90-91 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), cert. denied, 548 U.S. 925 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. App'x 918, 920

8

(11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155); see also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies.").

Before determining whether Petitioner exhausted his administrative remedies with respect to his violation of bodily privacy claims, it will be helpful to explain the grievance procedure used in the Georgia state prison system at the time that the acts Plaintiff complains of allegedly occurred. Within the Georgia Department of Corrections, including Smith State Prison, the administrative grievance process was governed by SOP IIB05-0001. (Doc. no. 49, Ex. E) (hereinafter "SOP IIB05-0001"). Under this SOP, once an inmate had unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commenced with the filing of a formal grievance. SOP IIB05-0001 § VI(D). The inmate had five (5) business days from "the date the inmate discovered, or reasonably should have discovered, the incident giving rise to the complaint" to file the formal grievance. Id. § VI(D)(5). The timeliness requirements of the administrative process could be waived upon a showing of good cause. See id. The SOP required that the grievance counselor "thoroughly investigate the complaint" and prepare a report, which was to be submitted to the Warden or Superintendent, along with the grievance. Id. § VI(D)(5)(c),(e). The Warden or Superintendent would then review the grievance and the report and issue a response to the Grievance Coordinator, who would then return the original grievance form and the response to the inmate. Id. § VI(D)(5)(i). All of the preceding steps were to be completed within thirty (30) calendar days from the date the inmate's counselor received the grievance. Id. § VI(D)(5)(j). If the inmate was not satisfied with the Warden's response to the formal grievance,

he had four (4) business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee would then have ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(5)(k),(o). The grievance procedure terminated upon the issuance of a response from the Commissioner's Office. Id. § VI(D)(5)(o).

In the instant case, Plaintiff filed a single grievance that described the incident he states took place on July 24, 2003; there is no dispute regarding exhaustion with respect to this claim. (Doc. no. 49, Ex. A, p. 142) (hereinafter "Pl.'s Depo."). Plaintiff did not file any grievance with respect to any of the other nine incidences that allegedly occurred on July 5, 2003, July 22, 2003, August 28, 2003, September 4, 2003, September 23, 2003, October 9, 2003, November 5, 2003, November 13, 2003, and November 15, 2003. (Id. at 143). However, Plaintiff stated at his deposition that he did not file grievances with respect to these other incidences because when asked what he should do regarding Defendant's continuing inappropriate behavior, despite filing the initial grievance, the chief counselor, Daniel Cunningham, told him that "it wouldn't . . . do [any] good." (Id. at 144). Defendant makes no attempt to rebut this allegation in her motion for summary judgment, but does argue that since Plaintiff failed to file grievances with respect to the other nine incidences, he has failed to exhaust his administrative remedies with respect to these claims. (Doc. no. 48, p. 12) (hereinafter "Def.'s Br.").

The Court notes that factual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts. In the instant case, the Court is faced with a "swearing match" between a prison official and an inmate, with Defendant

10

arguing that Plaintiff failed to exhaust his administrative remedies and Plaintiff alleging that those remedies were "unavailable." As a general rule, "[i]ssues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." McCormick, 333 F.3d at 1240 n.7.

Nevertheless, the Eleventh Circuit has recently approved that a district judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies. Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citing Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003). Additionally, as the Honorable B. Avant Edenfield, United States District Judge, has explained in an analogous case:

> Congress enacted § 1997e(a) of the [PLRA] to *curtail* inmate litigation, not create an entire new layer of jury trials in the very overburdened court system that PLRA was meant to relieve. To hold that Priester is entitled to a jury trial on this preliminary issue [whether administrative remedies were "available"] would open the floodgates to even more litigation. Were this Court to hold otherwise, how many *convicted criminals*--in a legal world where civil-case originating perjury prosecutions are at best a rarity--would *not* then claim that their guards refused to avail them grievance forms or otherwise did something to excuse the exhaustion requirement? How many inmates like Priester, after pointing to the ensuing swearing match, would *not* then demand a jury trial on this *preliminary* issue, and thereby create a *second* litigation layer on top of the "merits" layer?
> . . . . [T]he Court concludes that . . . . exhaustion constitutes a preliminary issue for which no jury trial right exists, and therefore judges can and should make credibility determinations on exhaustion-excusal issues.

Stanley v. Rich, CV 605-075, 2006 WL 1549114, at *2-3 (S.D. Ga. June 1, 2006) (quoting Priester v. Rich, CV 605-071, doc. no. 41, pp. 6-7 (S.D. Ga. Apr. 4, 2006), aff'd, Bryant v. Rich, 530 F.3d 1368 (11th Cir. 2008)). Similarly, the Supreme Court has explained that "discredited testimony" cannot be relied upon to resist summary judgment. See Anderson, 477 U.S. at 256-57. Thus, to the extent Plaintiff relies upon his own allegations of

unavailability of administrative remedies, the Court properly considers whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Jeffreys, 426 F.3d at 555.

Here, the Court concludes that Plaintiff's argument that his administrative remedies were unavailable does not preclude summary judgment on his claims related to the nine incidences for which he did not pursue a grievance. Under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"[4] Johnson, 418 F.3d at 1155, 1156. Likewise, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. As the Court has noted *supra*, the plain language of § 1997e(a) forbids any inquiry except into whether administrative remedies are "available."

In order to demonstrate that administrative remedies were unavailable, Plaintiff must point to specific facts showing that prison staff inhibited him from utilizing the grievance process. See Boyd v. Corr. Corp. of Am., 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies). Plaintiff cannot show that administrative remedies were

---

[4]Whether that possibility may be slight is irrelevant. The Eleventh Circuit has explained that, even if the likelihood of obtaining administrative relief is akin to that of being struck by lightning, an inmate must still exhaust administrative remedies. See Alexander, 159 F.3d at 1325 (quoting Irwin v. Hawk, 40 F.3d 347, 349 (11th Cir. 1994) ("No doubt denial *is* the likeliest outcome, but that is not sufficient reason for waiving the requirement of exhaustion. Light[]ning may strike; and even if it doesn't, in denying relief the [administrative authority] may give a statement of its reasons that is helpful to the district court in considering the merits.")).

unavailable simply by making a blanket allegation without any supporting evidence. Of course, those federal courts to consider the issue have held that threats of violent reprisal can, under certain circumstances, render administrative remedies "unavailable" or otherwise justify an inmate's failure to pursue them. See, e.g., Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004).

More generally, courts have held that prison officials may, as a result of their own conduct, become equitably estopped from relying upon § 1997e(a).[5] Of particular note, in Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999), the Eleventh Circuit explained that prison officials cannot "unequivocally" tell an inmate that resort to administrative remedies is "precluded" or "even prohibited" and then rely upon § 1997e(a) to argue that the inmate failed to exhaust available administrative remedies. Taken together, these cases stand for the simple proposition that prison officials should not benefit from conduct which inhibits an inmate from properly exhausting administrative remedies.

In the instant case, Plaintiff's has not shown that his administrative remedies were unavailable, and Defendant is entitled to summary judgment on Plaintiff's claims arising out of the events that allegedly occurred on July 5, 2003, July 22, 2003, August 28, 2003, September 4, 2003, September 23, 2003, October 9, 2003, November 5, 2003, November 13, 2003, and November 15, 2003. As noted above, when questioned at his deposition as to why he did not file grievances with respect to the other incidences, Plaintiff testified that he

---

[5]See, e.g., Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (*per curiam*); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 n.2 (5th Cir. 2001).

inquired of the grievance counselor what he should do about Defendant's continuing inappropriate conduct. This counselor informed him that "if it [was] the same complaint [regarding Defendant] . . . , it wouldn't do [any] good" to file another grievance. (Pl.'s Depo., p. 144). Plaintiff was also apparently told by this counselor that only one grievance was necessary if it involved the same conduct, even if the conduct occurred on different days. (Id.).

At first blush, this testimony would appear to demonstrate that Defendant should be equitably estopped from invoking the exhaustion requirement since Plaintiff was apparently told that he need not use his administrative remedies, rendering them unavailable. Miller, 196 F.3d at 1194. However, "inadmissible hearsay 'cannot be considered on a motion for summary judgment'" unless it can be "reduced to admissible evidence at trial." Macuba v. Deboer, 193 F.3d 1316, 1322-23 (11th Cir. 1999) (citations omitted); see also Reese v. Herbert, 527 F.3d 1253, 1271 n.29 (11th Cir. 2008) (affirming a district court's decision in a § 1983 action to disregard affidavits containing inadmissible hearsay at summary judgment). This rule is based on the requirement under the Federal Rules of Civil Procedure that affidavits opposing summary judgment be based on "personal knowledge." Fed. R. Civ. P. 56(e).

While Plaintiff here has not submitted an affidavit containing hearsay, his statement at his deposition as to what he was told by his grievance counselor regarding the availability of his administrative remedies constitutes the type of inadmissible hearsay that the Court may not consider unless it can be reduced to admissible form. While this statement might be admissible if it (1) fell within an exception to the hearsay rule; (2) did not constitute hearsay

at all, because it was not offered for the truth of the matter asserted; or (3) was used solely for impeachment purposes, none of these situations apply in the instant case. See Macuba, 193 F.3d at 1323-24. The Court easily disposes of the first and third possibilities, as a review of the Federal Rules of Evidence reveals no applicable exemption or exception to the hearsay rule, see generally Fed. R. Evid. 801(d), 803, 804, and the statement clearly may be used for some other purpose besides impeachment, since it clearly creates an issue regarding availability. Turning to the second possibility, the Court notes that statements that would otherwise constitute hearsay may be admissible if proffered to show the effect such statements had on the listener. See United States v. Cruz, 805 F.2d 1464 1477-78 (11th Cir. 1986); Tucker v. Hous. Auth. of Birmingham Dist., 507 F. Supp. 2d 1240, 1269 (N.D. Ala. 2006). Here, the statement by the grievance counselor to Plaintiff could conceivably be admitted to demonstrate its effect on Plaintiff, namely that he believed his administrative remedies were unavailable. However, in an exhaustion analysis, Plaintiff may not rely on such subjective feelings to demonstrate unavailability of administrative remedies. See Boyd, 380 F.3d at 998. Moreover, if inmates could defeat summary judgment on claims for which they failed to exhaust their administrative remedies by simply testifying that one or more prison officials told them that using the grievance process was futile or unnecessary, without any other evidence, such a precedent "would open the floodgates to even more litigation" and defeat the purposes of the PLRA. Stanley, 2006 WL 1549114, at *2.

Accordingly, the Court concludes that this alleged statement by the grievance counselor cannot be reduced to admissible form and Plaintiff may not rely on it to defeat summary judgment on those claims for which he failed to exhaust his administrative

remedies. Plaintiff admits that he did not exhaust his administrative remedies with respect to his claims arising out of incidences that allegedly occurred on July 5, 2003, July 22, 2003, August 28, 2003, September 4, 2003, September 23, 2003, October 9, 2003, November 5, 2003, November 13, 2003, and November 15, 2003. (Pl.'s Depo., p. 143). Furthermore, he has presented no other evidence that the Court may consider that demonstrates that his administrative remedies were unavailable. Thus, the Court is left with Defendant's evidence in the form of the SOP followed at Smith State Prison, which allows all inmates access to the grievance process, and Plaintiff's admission that he failed to exhaust the claims discussed herein. (See Def.'s Br., Ex. E; Pl.'s Depo, p. 143). In light of these considerations, the Court concludes that Plaintiff has failed to exhaust his administrative remedies with respect to his July 5, 2003, July 22, 2003, August 28, 2003, September 4, 2003, September 23, 2003, October 9, 2003, November 5, 2003, November 13, 2003, and November 15, 2003 claims, and Defendant is entitled to summary judgment on these claims.

## C.    Retaliation Claims

The Court next addresses Plaintiff's claim that Defendant retaliated against him for filing his grievance and his lawsuit by filing false disciplinary reports and encouraging her co-workers to do the same. In order to prevail on a claim of retaliation, an inmate must establish three elements: "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the . . . allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citation omitted). Here, there is no question that Plaintiff's speech

was constitutionally protected, as the First Amendment prohibits prisons officials from retaliating against inmates for filing lawsuits or administrative grievances, or for exercising the right of free speech. <u>Farrow v. West</u>, 320 F.3d 1235, 1248 (11th Cir. 2003); <u>Wright v. Newsome</u>, 795 F.2d 964, 968 (11th Cir. 1986).[6] Second, the Court finds that the issuance of false disciplinary reports (and the encouragement of others to do the same) would likely deter the ordinary inmate from filing grievances and lawsuits. Thus, the only issue left to be decided is whether Plaintiff has established a "causal relationship," which can be shown by "demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'" <u>Farrow</u>, 320 F.3d at 1248 (citing <u>Wildberger v. Bracknell</u>, 869 F.2d 1467, 1468 (11th Cir. 1989)). The Eleventh Circuit has ruled that "[d]irect evidence of an illegal motive will usually suffice to create a genuine issue of fact and preclude summary judgment." <u>Harris</u>, 65 F.3d at 917.[7] Where a plaintiff has failed to establish a causal connection between his protected conduct and the alleged retaliatory action, summary judgment for the defendant is proper. <u>Farrow</u>, 320 F.3d at 1248-49.

Here, Plaintiff has failed to establish a causal connection between his protected conduct and Defendant's alleged acts of retaliation. Plaintiff filed his only relevant grievance

---

[6] <u>See also</u> <u>Harris v. Ostrout</u>, 65 F.3d 912, 916 (11th Cir. 1995) (*per curiam*) (noting that prison officials may not burden an inmate's First Amendment rights "with practices that are not reasonably related to legitimate penological objectives" or "act with the intent of chilling that First Amendment right").

[7] In <u>Harris</u>, the Eleventh Circuit reversed the district court's decision granting summary judgment where the prisoner plaintiff submitted corroborating affidavits from fellow prisoners that stated a prison official commented that he filed disciplinary reports against the plaintiff, at least in part, in retaliation for prior litigation. <u>Harris</u>, 65 F.3d at 917.

on July 29, 2003, which described the incident that occurred on July 24, 2003. (Doc. no. 49, Ex. A-46). The instant lawsuit was signed by Plaintiff on December 4, 2003, and filed with the Court on December 8, 2003. (Doc. no. 1). The allegedly retaliatory disciplinary reports issued by Defendant Harris were written on July 5, 2003 for insubordination and verbal threat, and on July 22, 2003 for exposure/exhibition and failure to follow instructions. (Doc. no. 49, Exs. A-1 & A-3). The allegedly retaliatory disciplinary reports issued by others at Defendant's request were written by Officer James Sprouse on July 5, 2003 for insubordination, and by Officer Eric Moore on July 22, 2003 for failure to follow instructions. (Id. at Exs. A-2 & A-4). These four disciplinary reports that Plaintiff alleges were issued in retaliation for filing his grievance and lawsuit were all written before Plaintiff ever filed his grievance on July 29, 2003 and his lawsuit in early December 2003. By its very nature, the concept of retaliation implies that the individual performing the retaliatory act did so in response to some prior act of the person retaliated against. Plaintiff's allegations of retaliation cannot withstand logic, as the alleged retaliatory acts, the issuance of the fabricated disciplinary reports, took place before the acts prompting the alleged retaliation, namely Plaintiff's filing of his grievance and lawsuit. Simply stated, Plaintiff has failed to establish that anything he did prompted these alleged retaliatory acts by Defendant, and thus he has failed to demonstrate any causal connection between the filing of his grievance and lawsuit and the issuance of the fabricated disciplinary reports. Accordingly, Plaintiff's

18

retaliation claims fail as a matter of law, and Defendant is entitled to summary judgment on these claims.[8]

## D. Official Capacity Claims

As Defendant correctly notes in her motion, Plaintiff fails to indicate in his complaint whether he has sued Defendant in her official or individual capacity. (Def.'s Br. at 14). When a state officer is sued in her official capacity, the suit is actually against the state. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Consequently, a plaintiff seeking money damages from a defendant in her official capacity is, in effect, seeking that award from the state. Id. Under the Eleventh Amendment, one cannot sue a state for damages at law unless the state waives its protection. Id. at 169. To the extent that Plaintiff is suing Defendant in her official capacity, such claims fail as a matter of law. Therefore, Defendant is entitled to summary judgment on all official capacity claims against her.

## E. Punitive Damages Claim

Defendant claims in her motion that an award of punitive damages in this case is prohibited by the Eleventh's Circuit decision in Johnson v. Breeden, 280 F.3d 1308 (11th Cir. 2002). (Def.'s Br., pp. 8-9). In Johnson, the Eleventh Circuit commented that an award of punitive damages is a form of prospective relief under the PLRA. Johnson, 280 F.3d at 1325. Such relief

> shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court should not grant or approve any prospective relief unless . . . such relief is narrowly drawn, extends no further than necessary to correct the violation of a Federal right,

---

[8]Given this conclusion, it is unnecessary for the Court to consider whether Defendant is entitled to qualified immunity on these claims. (See Def.'s Br. at 11-13).

and is the least intrusive means necessary to correct the violation of the Federal right.

Id. at 1323-24 (citation omitted). The Eleventh Circuit went on to clarify that "a punitive damages award must be no larger than reasonably necessary to deter the kind of violations of the federal right that occurred in the case . . . ." Id. at 1325. Defendant argues in her motion that since Plaintiff is now incarcerated at Valdosta State Prison, she no longer has any influence over Plaintiff's conditions of confinement, and as such, any award of punitive damages would extend further than reasonably necessary to serve its deterrent function. (Def.'s Br. at 9-10).

Plaintiff responds by arguing that punitive damages are also intended to punish wrongdoers and deter them and other similarly-situated individuals from engaging in similar acts in the future. (Doc. no. 56, p. 7) (citing Wright v. Sheppard, 919 F.2d 665, 671 (11th Cir. 1992)); see also State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003) ("[P]unitive damages should only be awarded if the defendant's culpability . . . is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence."); BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 568 (1996) ("Punitive damages may be properly imposed to further a . . . legitimate interest[] in punishing unlawful conduct and deterring its repetition."). While not explicitly stated, the Court construes Plaintiff's argument liberally to conclude that an award of punitive damages would still deter Defendant from committing similar acts against other inmates in the future, even though he is no longer incarcerated at Defendant's place of employment.

Notwithstanding these arguments, the Court declines to make a determination as to the propriety of an award of punitive damages at this time. It is well-settled that whether a

defendant's conduct warrants an award of punitive damages is best left to the jury. <u>See</u> <u>Wright</u>, 919 F.2d at 671 ("No matter how egregious the conduct, whether to award punitives is left to the factfinder."); <u>see also</u> <u>Rieara v. Sweat</u>, CV 205-174, 2007 WL 853465, at *6 (S.D. Ga. Mar. 16, 2007) ("The awarding of punitive damages is a determination for the trier of fact at trial."). As this Court is recommending that Plaintiff's July 24, 2003 bodily privacy claim against Defendant in her individual capacity proceed to trial, Plaintiff will have an opportunity to demonstrate to the jury whether Defendant's conduct warrants an award of punitive damages. Based on the relevant case law in this Circuit and within this District, it would be inappropriate for the Court to usurp the role of the factfinder and grant summary judgment in favor of Defendant on Plaintiff's claim for punitive damages. Accordingly, Defendant's motion for summary judgment on this ground should be denied.

### III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for partial summary judgment be **GRANTED IN PART** and **DENIED IN PART**, and that Plaintiff's unexhausted bodily privacy claims, retaliation claims, and official capacity claims be **DISMISSED**. This case should proceed as to Plaintiff's July 24, 2003 bodily privacy claim against Defendant in her individual capacity.

SO REPORTED and RECOMMENDED this 8th day of January, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

21